# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | |
|---|---|
| IVAN MURPHY, Individually and for Others Similarly Situated | **Case No. 2:23-cv-775** |
| v. | Jury Trial Demanded |
| COMPLIANCE STAFFING AGENCY, LLC d/b/a JENNMAR SERVICES | FLSA Collective Action Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Ivan Murphy (Murphy) brings this class and collective action to recover unpaid wages and other damages from Compliance Staffing Agency, LLC d/b/a Jennmar Services (Jennmar).

2.      Murphy worked for Jennmar as a Foreman/Crew Leader assigned to Jennmar's client, Hanson Aggregates (Hanson), in Pennsylvania.

3.      Like the Putative Class Members (as defined below), Murphy regularly worked more than 40 hours in a workweek.

4.      But Jennmar does not pay them for all the hours they work.

5.      Instead, Jennmar only pays Murphy and the Putative Class Members for the number of hours Jennmar bills its clients for their work (based on the clients' pre-determined work schedules), regardless of the number of hours these employees actually work (or Jennmar's "billable pay scheme")

6.      Murphy and the Putative Class Members, however, regularly work beyond these pre-determined work schedules before and/or after their scheduled shifts "off the clock" to complete their job duties and responsibilities in accordance with Jennmar's (and its clients') policies, procedures, and expectations.

7.      But Jennmar does not pay Murphy and the Putative Class Members for their routine pre- and post-shift "off the clock" work.

8.      Jennmar's billable pay scheme violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), the Pennsylvania Minimum Wage Act, 43 PA. STAT. § 333.101, *et seq.* (PMWA) and the Pennsylvania Wage Payment and Collection Law, 43 PA. STAT. § 260.1, *et seq.* (WPCL) by depriving Murphy and the Putative Class Members of wages, including overtime pay, for all hours worked, including those worked in excess of 40 hours in a workweek.

9.      Likewise, Jennmar also prohibits these employees from recording the time they spend travelling between Jennmar's base and its clients' jobsites because Jennmar does not bill its clients for such travel time.

10.      Thus, under Jennmar's billable pay scheme, Murphy and the Putative Class Members are deprived of wages, including overtime pay, for all hours worked, including those hours spent traveling to Jennmar's clients' jobsites, in violation of the FLSA, PMWA, and WPCL.

11.      Finally, in addition to depriving Murphy and the Putative Class Members of wages for all hours worked, Jennmar also uniformly paid these employees daily per diems.

12.      But Jennmar failed to include these per diems in calculating Murphy's and the Putative Class Members' regular rates of pay for overtime purposes.

13.      Jennmar's per diem pay scheme violates the FLSA, PMWA, and WPCL by depriving Murphy and the Putative Class Members of overtime compensation at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

## JURISDICTION & VENUE

14.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15.     The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over Jennmar because Jennmar is a domestic limited liability company that maintains its headquarters in Canonsburg, Pennsylvania.

17.     Venue is proper because Jennmar maintains its headquarters in Canonsburg, Pennsylvania. 28 U.S.C. § 1391(b)(1).

**PARTIES**

18.     Murphy worked for Jennmar as a Foreman/Crew Lead in Pennsylvania from approximately June 2022 until September 2022.

19.     Throughout his employment, Jennmar classified Murphy as non-exempt and paid him on an hourly basis.

20.     Throughout his employment, Jennmar subjected Murphy to its billable pay scheme and failed to pay him wages, including overtime wages, for all hours worked.

21.     Throughout his employment, Jennmar also paid Murphy per diem payments that Jennmar failed to include in calculating her regular rate of pay for overtime purposes.

22.     Murphy's written consent is attached as **Exhibit 1**.

23.     Murphy brings this action on behalf of himself and other similarly situated hourly, non-exempt Jennmar employees who were subject to (1) Jennmar's billable pay scheme, and/or (2) Jennmar's per diem pay scheme.

24.     Jennmar uniformly prohibits these employees from recording their hours worked beyond the number of hours Jennmar bills its clients for the same.

25.     Jennmar uniformly prohibits these employees from recording their hours spent traveling to and from Jennmar's and its clients' jobsites.

26.     Further, Jennmar uniformly pays these employees per diems that Jennmar fails to include in calculating their regular rates of pay for overtime purposes.

27.     Thus, Jennmar uniformly deprives these employees of wages (including overtime compensation at the proper premium rate based on *all* renumeration received) for all hours worked, including those in excess of 40 hours in a workweek, in violation of the FLSA, PMWA, and/or WPCL.

28.     The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt Jennmar employees who were subject to (1) Jennmar's billable pay scheme and/or (2) Jennmar's per diem pay scheme at any time during the past 3 years ("FLSA Collective Members" or "FLSA Collective")**

29.     Murphy also seeks to represent such a class under the PMWA and WPCL pursuant to Fed. R. Civ. P. 23.

30.     The Pennsylvania Class of similarly situated employees is defined as:

> **All hourly, non-exempt Jennmar employees in Pennsylvania who were subject to (1) Jennmar's billable pay scheme and/or (2) Jennmar's per diem pay scheme at any time during the past 3 years ("Pennsylvania Class Members" or "Pennsylvania Class").**

31.     The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the "Putative Class Members" or "Putative Classes."

32.     Jennmar is a Pennsylvania limited liability company that maintains its headquarters and registered office in Canonsburg, Pennsylvania.

33.     Jennmar is registered to do business in the Commonwealth.

34.     Jennmar may be served with process by serving its registered agent: **CT Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101**.

## COVERAGE UNDER THE FLSA

35.    At all relevant times, Jennmar was and is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36.    At all relevant times, Jennmar was and is an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

37.    At all relevant times, Jennmar has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cellphones, personal protective equipment, tools, etc. – that have been moved in or produced for commerce.

38.    In each of the past 3 years, Jennmar has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

39.    At all relevant times, Murphy and the Putative Class Members were Jennmar's "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

40.    Jennmar uniformly prohibited Murphy and the Putative Class Members from recording they worked any hours beyond their scheduled shifts.

41.    As a result, Jennmar failed to pay Murphy and the Putative Class Members for compensable work, including overtime, in violation of the FLSA.

42.    Jennmar's uniform billable pay scheme, which deprives Murphy and the Putative Class Members of overtime compensation for all overtime hours worked in the weeks in which these employees work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

43.    Further, Jennmar uniformly paid Murphy and the Putative Class Members per diems that Jennmar failed to include in calculating these employees regular rates of pay for overtime purposes.

44.    As a result, Jennmar failed to pay Murphy and the Putative Class Members overtime wages at the proper premium rate – based on *all* renumeration received – in violation of the FLSA.

45.    Jennmar's per diem pay scheme, which deprives Murphy and the Putative Class Members of overtime compensation at the proper premium rate for the weeks in which these employees work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

46.    Jennmar is an employment and staffing agency that "serves the industrial, coal, oil & gas, medical, administrative, and distribution industries" across the United States, including in Pennsylvania.[1]

47.    Jennmar employs workers, including Murphy and the Putative Class Members, that it assigns to provide services to its clients.

48.    Jennmar uniformly classifies these employees as non-exempt and pays them on an hourly basis.

49.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

50.    For example, Murphy worked for Jennmar as a Foreman/Crew Lead in Pennsylvania from approximately June 2022 until September 2022.

---

[1] https://www.jennmarservices.com/industries (last visited May 9, 2023).

51.     As a Foreman/Crew Lead, Murphy's primary responsibilities included welding machinery; repairing screens, conveyors, pulley, and belts; and ensuring the mine and the equipment therein was function in accordance with Jennmar (and/or its clients') strict specifications.

52.     Throughout his employment, Jennmar classified Murphy as non-exempt and paid him on an hourly basis.

53.     Throughout his employment, Jennmar subjected Murphy to its billable pay scheme and failed to pay him wages, including overtime wages, for all hours worked.

54.     Throughout his employment, Jennmar also paid Murphy per diem payments that Jennmar failed to include in calculating her regular rate of pay for overtime purposes.

55.     Murphy and the Putative Class Members performed their jobs under Jennmar's supervision, and using materials, equipment, and technology approved and supplied by Jennmar and/or its clients.

56.     Jennmar requires Murphy and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

57.     At the end of each pay period, Murphy and the Putative Class Members received wages from Jennmar that were determined by common systems and methods that Jennmar selected and controlled.

58.     Jennmar requires its non-exempt employees, including Murphy and the Putative Class Members, to submit weekly timesheets.

59.     But Jennmar subjects its hourly, non-exempt employees, including Murphy and the Putative Class Members, to a common policy and practice of prohibiting these employees from recording hours worked beyond the number of hours Jennmar bills its clients for the same, regardless of whether these employees actually worked more.

60.    Specifically, Jennmar's clients provide Jennmar with a pre-determined schedule for Murphy's and the Putative Class Members' work, which Jennmar, in turn, provides to these employees.

61.    For example, Jennmar scheduled Murphy and certain Putative Class Members to work 12-hour shifts (from 5 p.m. until 5 a.m.) during the workweek from September 19, 2022 through September 25, 2022:

| | Hanson - Downingtown Quarry | | |
|---|---|---|---|
| | **5pm to 5am - 9/19 to 9/25** | | |
| | **Employee** | **Position** | **Scheduled Days** |
| 1 | Ivan Murphy | MW-Foreman | Tue-Fri |
| 2 | Franklin Bankhead Jr | MW/L | Tue-Fri |
| 3 | Joseph McClurg | L | Tue-Fri |
| 4 | Owen Wiley | MW | Mon - Thur |
| 5 | Nathan Schell | MW | Mon - Thur |
| 6 | Marshall Goff | MW | Mon - Thur |
| 7 | Landon Dowell | MW/L | Mon - Sat |
| 8 | Joe Garrett | L | Mon - Sat |
| 9 | Will Poling | L | Mon - Sat |

62.    Based on this set work schedule, Jennmar prohibited Murphy and these same certain Putative Class Members from recording they worked more than their 12-hour shifts on their daily timesheets:









63.    Rather, under Jennmar's uniform billable pay scheme, Jennmar instructs Murphy and the Putative Class Members to only record their hours worked up to 12 hours per day (based on their pre-determined schedules of 12-hour shifts), regardless of whether they actually worked more than 12 hours.

64.    This is because, under Jennmar's uniform billable pay scheme, Jennmar only permits Murphy and the Putative Class Members to record (and be paid for) up to the number of hours Jennmar bills its clients for such work (based on these pre-determined schedules).

65.    But Murphy and the Putative Class Members routinely work beyond their scheduled shifts to complete their jobs in accordance with Jennmar (and/or its clients') policies, procedures, and expectations.

66.    Indeed, prior to their scheduled shifts, Jennmar requires Murphy and the Putative Class Members to attend daily safety meetings "off the clock."

67.    Specifically, Jennmar requires Murphy and the Putative Class Members to arrive at the jobsite 1 to 2 hours before their scheduled shifts to conduct daily pre-shift safety meetings.

68.    But Jennmar prohibits Murphy and the Putative Class Members from including this daily pre-shift "off the clock" work in their total number of hours worked on their timesheets.

69.    Instead, Jennmar requires Murphy and the Putative Class Members to complete their mandatory pre-shift safety meetings "off the clock."

70.    Thus, Jennmar does not pay Murphy and the Putative Class Members for this mandatory pre-shift work.

71.    This unpaid time is compensable under the FLSA, PMWA, and/or WPCL because Jennmar knew, or should have known, that Murphy and the Putative Class Members were performing unpaid work "off the clock" before their shifts because Jennmar expected and required them to do so.

72.    The unpaid time is also compensable under the WPCL because Jennmar agreed to pay Murphy and the Pennsylvania Class Members set rates of pay for all hours they worked, and Jennmar failed to pay them all their earned wages, including the time they worked "off the clock" before their shifts.

73.    Indeed, Jennmar mandated and required Murphy and the Putative Class Members to attend daily safety meetings "off the clock" before their shifts began; the daily pre-shift safety meetings

were completed on Jennmar's (and/or its clients') premises and jobsites; the daily pre-shift safety meetings was controlled by Jennmar; and the daily pre-shift safety meetings was undertaken primarily for Jennmar's (and its clients') benefit.

74.    Further, the mandatory daily pre-shift safety meetings were necessary to the principal work Murphy and the Putative Class Members perform – ensuring the mills and mines are functioning safely and in accordance with Jennmar (and/or its clients') expectations, specifications, and policies.

75.    Jennmar requires Murphy and the Putative Class Members to attend daily pre-shift safety meetings ("off the clock") before they begin their scheduled shifts to ensure they are ready to begin their millwork as soon as their shifts begin.

76.    Thus, these mandatory daily pre-shift safety meetings were integral and indispensable to Murphy's and the Putative Class Members' millwork and primary job duties.

77.    Indeed, Jennmar could not eliminate these daily safety meetings altogether without impairing Murphy's and the Putative Class Members' ability to safely perform their millwork duties.

78.    Jennmar failed to exercise its duty to ensure Murphy and the Putative Class Members were not performing work that Jennmar did not want performed "off the clock" before their shifts.

79.    Despite accepting the benefits, Jennmar did not pay Murphy and the Putative Class Members for the compensable work they performed "off the clock" before their shifts.

80.    Thus, Jennmar was, and is, required to pay Murphy and the Putative Class Members for this pre-shift "off the clock" work, regardless of whether it bills its clients for such work.

81.    But Jennmar only pays these employees up to a fixed number of hours per day based on their pre-determined scheduled shifts, regardless of the number of hours they actually work.

82.    Thus, under Jennmar's uniform billable pay scheme, Murphy and the Putative Class Members are denied overtime pay for all overtime hours worked, including time these employees spent

working "off the clock" before and/or after their scheduled shifts, in violation of the FLSA, PMWA, and/or WPCL.

83. Likewise, under Jennmar's uniform billable pay scheme, Murphy and the Pennsylvania Class Members are denied "straight time" pay (at their agreed hourly rates) for all hours worked, including time these employees spent working "off the clock" before and/or after their scheduled shifts, in violation of the WPCL.

84. Similarly, under Jennmar's uniform billable pay scheme, Jennmar also fails to pay Murphy and the Putative Class Members for the approximately 5 to 10 hours each week they spend traveling from Jennmar's headquarters in Canonsburg and/or Harrisburg to the clients' jobsites in the counties surrounding Philadelphia where they work because Jennmar does not bill its clients for such mandatory travel time.

85. Instead, Jennmar requires Murphy and the Putative Class Members to complete their mandatory traveling "off the clock."

86. This unpaid travel time is compensable under the FLSA, PMWA, and/or WPCL because Jennmar knew, or should have known, that Murphy and the Putative Class Members were performing unpaid work "off the clock" because Jennmar expected and required them to do so.

87. The unpaid time is also compensable under the WPCL because Jennmar agreed to pay Murphy and the Pennsylvania Class Members set rates of pay for all hours they worked, and Jennmar failed to pay them all their earned wages, including the time they worked "off the clock" traveling to jobsites.

88. Jennmar failed to exercise its duty to ensure Murphy and the Putative Class Members were not performing work that Jennmar did not want performed "off the clock" traveling to jobsites.

89.     Despite accepting the benefits, Jennmar did not pay Murphy and the Putative Class Members for the compensable work they performed "off the clock" traveling to jobsites.

90.     Thus, Jennmar was, and is, required to pay Murphy and the Putative Class Members for this "off the clock" travel time.

91.     But Jennmar failed to pay these employees for the 5 to 10 hours each week they were required to travel to Jennmar's clients' jobsites to perform their job duties because Jennmar does not bill its clients for the same.

92.     Thus, under Jennmar's uniform billable pay scheme, Murphy and the Putative Class Members are denied overtime pay for all overtime hours worked, including time these employees spent working "off the clock" traveling to jobsites, in violation of the FLSA, PMWA, and/or WPCL.

93.     Likewise, under Jennmar's uniform billable pay scheme, Murphy and the Pennsylvania Class Members are denied "straight time" pay (at their agreed hourly rates) for all hours worked, including time these employees spent working "off the clock" traveling to jobsites, in violation of the WPCL.

94.     Jennmar knows Murphy and the Putative Class Members routinely perform work "off the clock" before and/or after their scheduled shifts and/or traveling to jobsites because Jennmar expects and requires these employees to do so.

95.     But Jennmar does not pay Murphy and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA, PMWA, and/or WPCL.

96.     Further, in addition to limiting the number of hours Murphy and the Putative Class Members could be paid for each workday, Jennmar also uniformly pays these employees daily per diem payments.

97.    But Jennmar fails to include these per diems in calculating Murphy's and the Putative Class Members' regular rates of pay for overtime purposes.

98.    Jennmar's per diem pay scheme violates the FLSA, PMWA, and/or WPCL by failing to pay Murphy and the Putative Class Members overtime at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

99.    Murphy worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

100.    Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

101.    Indeed, Murphy and the Putative Class Members typically work 12 hours a day, for up to 7 days a week, for 10- to 12-days on/4 days off hitches.

102.    And Murphy and the Putative Class Members regularly are also required to work up to 3 hours "off the clock" before and/or after their shifts to complete their job duties and responsibilities.

103.    Likewise, Murphy and the Putative Class Members regularly spend an additional 5 to 10 hours each week traveling from Jennmar's headquarters to the clients' jobsites.

104.    As a result, Murphy and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

105.    When Murphy and the Putative Class Members worked more than 40 hours in a workweek, Jennmar did not pay them overtime wages at 1.5 times their regular hourly rates – based on *all* renumeration received – for all overtime hours worked because (1) Jennmar failed to include time these employees worked beyond their scheduled shifts in their total number of hours worked in

a given workweek, and/or (2) Jennmar failed to include these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

106.    Likewise, when Murphy and the Pennsylvania Class Members worked fewer than 40 hours in a workweek, Jennmar did not pay them all their "straight time" wages (at their agreed hourly rates) for all hours worked because Jennmar failed to include time these employees worked beyond their scheduled shifts in their total number of hours worked in a given workweek.

107.    Jennmar knew, or should have known, it was subject to the FLSA, PMWA, and WPCL, including their respective overtime provisions.

108.    Jennmar knew, or should have known, the FLSA and PMWA require it to timely pay non-exempt employees, including Murphy and the Putative Class Members, overtime compensation at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek, regardless of whether Jennmar billed its clients for the same.

109.    Jennmar knew, or should have known, the WPCL requires it to timely pay employees, including Murphy and the Putative Class Members, all wages (including "straight time" and overtime wages) due, at the rates Jennmar agreed to pay them, for all hours worked.

110.    Jennmar knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA, PMWA, and/or WPCL.

111.    Jennmar knew, or should have known, Murphy and the Putative Class Members regularly worked "off the clock" beyond their scheduled shifts because Jennmar expected and required them to do so.

112.    Nonetheless, Jennmar failed to pay Murphy and the Putative Class Members wages, including overtime wages at the proper premium rate, for all hours worked, including those worked in excess of 40 hours in a workweek, which is in willful violation of the FLSA, PMWA, and WPCL.

113.    Likewise, Jennmar failed to pay Murphy and the Pennsylvania Class Members all their wages earned at the rates Jennmar agreed to pay them for the work they performed, which is in willful violation of the WPCL.

114.    Jennmar knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Murphy and the Putative Class Members of pay, including overtime compensation at the proper premium rate, for all hours worked, including those worked in excess of 40 hours in a week, in violation of the FLSA, PMWA, and/or WPCL.

115.    Jennmar's failure to pay Murphy and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

116.    Jennmar's failure to pay Murphy and the Putative Class Members for all hours worked (including those beyond their scheduled shifts) was neither reasonable, nor was the decision not to pay these employees for all hours worked made in good faith.

117.    Jennmar's failure to pay Murphy and the Pennsylvania Class Members all wages earned at the rates Jennmar agreed to pay them for all hours worked was not the result of a *bona fide* dispute.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

118.    Murphy brings his claims as a class and collective action under Section 216(b) of the FLSA and Fed. R. Civ. P. 23.

119.    The Putative Class Members were uniformly victimized by (1) Jennmar's billable pay scheme and/or (2) Jennmar's per diem pay scheme, which are in willful violation of the FLSA, PMWA, and WPCL.

120.    Other Putative Class Members worked with Murphy and indicated they were paid in the same manner, performed similar work, and were subject to Jennmar's same illegal pay policies.

121.    Based on his experiences with Jennmar, Murphy is aware Jennmar's illegal practices were imposed on the Putative Class Members.

122.    Upon information and belief, the Putative Class Members are so numerous that joinder of all members is impracticable.

123.    While the exact number of Putative Class Members is unknown to Murphy at this time, it can be readily and easily ascertained from Jennmar's business and personnel records through appropriate discovery.

124.    The Putative Class Members are similarly situated in all relevant respects.

125.    Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime pay.

126.    Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

127.    Rather, the Putative Classes are held together by (1) Jennmar's illegal billable pay scheme and/or (2) Jennmar's per diem pay scheme, both of which systematically deprived Murphy and the Putative Class Members of proper wages, including proper premium overtime pay, for all hours worked, including those in excess of 40 hours in a workweek.

128.    Jennmar's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA, PMWA, and/or WPCL results from generally applicable, systematic

policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

129.    The Pennsylvania Class Members are similarly denied "straight time" wages (at their agreed hourly rates) for all hours worked when they work fewer than 40 hours in a workweek.

130.    The Putative Class Members are similarly denied overtime wages at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

131.    The back wages owed to Murphy and the Putative Class Members will be calculated using the same records and using the same formula.

132.    Murphy's experiences are therefore typical of the experiences of the Putative Class Members.

133.    Murphy has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

134.    Like each Putative Class Member, Murphy has an interest in obtaining the unpaid wages owed under state and/or federal law.

135.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

136.    Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and Jennmar will reap the unjust benefits of violating the FLSA, PMWA, and WPCL.

137.    Further, even if some of the Putative Class Members could afford individual litigation against Jennmar, it would be unduly burdensome to the judicial system.

138.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

139.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

140.    Among the common questions of law and fact are:

    a.    Whether Jennmar engaged in a policy and practice of prohibiting its hourly, non-exempt employees, including Murphy and the Putative Class Members, to record hours worked beyond their scheduled shifts;

    b.    Whether Jennmar's uniform billable pay scheme deprived Murphy and the Putative Class Members of pay for time worked "off the clock" outside their scheduled shifts in violation of the FLSA, PMWA, and/or WPCL;

    c.    Whether Jennmar failed to pay Murphy and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked "off the clock" outside of their scheduled shifts, in violation of the FLSA, PMWA, and/or WPCL;

    d.    Whether Jennmar failed to pay Murphy and the Pennsylvania Class Members all wages earned at their agreed rates for all hours worked in violation of the WPCL;

    e.    Whether Jennmar knew, or had reason to know, Murphy and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" outside of their scheduled shifts in violation of the FLSA, PMWA, and/or WPCL;

    f.    Whether Jennmar failed to include Murphy and the Putative Class Members' per diems in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA, PMWA, and/or WPCL;

g.   Whether Jennmar's violations of the FLSA, PMWA, and/or WPCL resulted from a continuing course of conduct;

h.   Whether Jennmar's decision not to pay Murphy and the Putative Class Members overtime wages at the proper rate for all overtime hours worked was made in good faith;

i.   Whether Jennmar's decision not to pay Murphy and the Putative Class Members all wages earned at the rates Jennmar agreed to pay them for all work performed was the result of a *bona fide* dispute; and

j.   Whether Jennmar's violations of the FLSA, PMWA, and/or WPCL were willful.

141.   Murphy and the Putative Class Members sustained damages arising out of Jennmar's illegal and uniform employment policies.

142.   Murphy knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

143.   Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Jennmar's records, and there is no detraction from the common nucleus of liability facts.

144.   Therefore, the issue of damages does not preclude class or collective treatment.

145.   Jennmar is liable under the WPCL for failing to pay Murphy and the Pennsylvania Class Members "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

146.    Jennmar is liable under the FLSA, PMWA, and WPCL for failing to timely pay Murphy and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they worked more than 40 hours in a workweek.

147.    Consistent with Jennmar's illegal billable pay scheme, Murphy and the Putative Class Members were not paid "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

148.    Consistent with Jennmar's illegal billable pay scheme, Murphy and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

149.    Consistent with Jennmar's illegal per diem pay scheme, Murphy and the Putative Class Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received when they worked more than 40 hours in a workweek.

150.    As part of its regular business practices, Jennmar intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, PMWA, and WPCL with respect to Murphy and the Putative Class Members.

151.    Jennmar's illegal policies deprived Murphy and the Putative Class Members of wages, including overtime compensation at the proper premium rate, which they are owed under state and/or federal law.

152.    There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

153.    This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

154.    Those similarly situated employees are known to Jennmar, are readily identifiable, and can be found through Jennmar's business and personnel records.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

155.    Murphy realleges and incorporates all other paragraphs by reference.

156.    Murphy brings his FLSA claim as a collective action on behalf of himself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

157.    Jennmar violated, and is violating, the FLSA by failing to pay Murphy and the FLSA Collective Members overtime compensation at rates not less than 1.5 these employees' regular rates of pay – based on all renumerations received – for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" outside of these employees' scheduled shifts.

158.    Throughout the relevant period, Jennmar only paid Murphy and the FLSA Collective Members for the number of hours it billed its clients for these employees' work based on pre-determined schedules.

159.    But throughout the relevant period, Jennmar expected and required Murphy and the FLSA Collective Members to work "off the clock" outside of their scheduled shifts.

160.    Throughout the relevant period, Jennmar paid Murphy and the FLSA Collective Members per diems.

161.    But throughout the relevant period, Jennmar failed to include these per diems in calculating Murphy's and the FLSA Collective Members' regular rates of pay for overtime purposes.

162.    Murphy and the Putative Class Members have been harmed as a direct and proximate result of Jennmar's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Jennmar derived a direct and substantial benefit.

163.    Jennmar knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Murphy and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked.

164.    Jennmar's failure to pay Douglas and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

165.    Accordingly, Murphy and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

166.    Murphy realleges and incorporates all other paragraphs by reference.

167.    Murphy brings his PMWA claims as class action on behalf of himself and the Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

168.    The conduct alleged violates the PMWA, 43 PA. STAT. § 333.101, *et seq*.

169.    At all relevant times, Jennmar was subject to the requirements of the PMWA because Jennmar is an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

170.    At all relevant times, Jennmar employed Murphy and the Pennsylvania Class Members as "employees" covered by the PMWA's protections. *See* 43 PA. STAT. § 333.103(h).

171.    Jennmar's uniform compensation schemes imposed on Murphy and the Pennsylvania Class Members failed to comply with 43 PA. STAT. § 333.104(c) and/or 34 PA. CODE § 231.43(b).

172.     Section 333.104(c) of the PMWA requires employers, like Jennmar, to pay employees, like Murphy and the Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek. 43 PA. STAT. § 333.104(c).

173.     Jennmar violated, and is violating, the PMWA by failing to pay Murphy and the Pennsylvania Class Members overtime wages (at the proper premium rate based on all renumeration received) for all hours worked in excess of 40 hours in a workweek, including time these employees work "off the clock" outside of their scheduled shifts. *See* 43 PA. STAT. § 333.104(c).

174.     Specifically, Jennmar failed to pay Murphy and the Pennsylvania Class Members for all overtime hours worked at the proper premium rates because (1) Jennmar limited the number of hours for which it would pay these employees under its uniform billable pay scheme, and/or (2) Jennmar failed to include these employees' per diems in calculating their regular rate of pay for overtime purposes.

175.     Murphy and the Pennsylvania Class Members have been harmed as a direct and proximate result of Jennmar's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Jennmar derived a direct and substantial benefit.

176.     Jennmar knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Murphy and the Pennsylvania Class Members premium overtime compensation for all overtime hours worked.

177.     Jennmar's failure to pay Murphy and the Pennsylvania Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

178.    Jennmar has acted willfully and has engaged in a continuing violation of the PMWA with respect to Murphy and the Pennsylvania Class Members.

179.    Accordingly, Murphy and the Pennsylvania Class Members are entitled to recover their unpaid overtime in amount equal to 1.5 times the regular rate of pay for all hours worked in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, as well as attorney's fees, costs, and expenses of this action, as provided by the PMWA. *See* 43 PA. STAT. § 333.113.

## COUNT III

### FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL
### (PENNSYLVANIA CLASS)

180.    Murphy realleges and incorporates all other paragraphs by reference.

181.    Murphy brings his WPCL claims as class action on behalf of himself and the Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

182.    The conduct alleged violates the WPCL, 43 PA. STAT. § 260.1, *et seq.*

183.    At all relevant times, Jennmar was an "employer" within the meaning of, and subject to the requirements of, the WPCL. *See* 43 PA. STAT. § 260.2a.

184.    At all relevant times, Jennmar employed Murphy and the Pennsylvania Class Members as "employees" within the meaning of the WPCL.

185.    The WPCL requires employers, like Jennmar, to pay employees, like Murphy and the Pennsylvania Class Members, all wages (including "straight time" and overtime wages) earned, due, and owing to them on their regular payday. 43 PA. STAT. § 260.3(a).

186.    During the course of their employment, Jennmar agreed to pay Murphy and each Pennsylvania Class Members an hourly rate for all hours they worked under and up to 40 hours in a workweek, as well as overtime rates for all hours they worked in excess of 40 hours in a workweek.

187.    Murphy and each Pennsylvania Class Members accepted Jennmar's offer.

188.    But during the course of their employment, Jennmar failed to pay Murphy and the Pennsylvania Class Members for all time they worked at the rates Jennmar agreed to pay them because (1) Jennmar limited the number of hours for which it would pay these employees under its uniform billable pay scheme, and/or (2) Jennmar failed to include these employees' per diems in calculating their regular rate of pay for overtime purposes.

189.    As a result of Jennmar illegal pay schemes Murphy and the Pennsylvania Class Members have been deprived of all wages earned, due, and owing to them. *See* 43 PA. STAT. § 260.3(a).

190.    Murphy and the Pennsylvania Class Members have been harmed as a direct and proximate result of Jennmar's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Jennmar derived a direct and substantial benefit.

191.    Jennmar knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Murphy and the Pennsylvania Class Members all "straight time" and overtime wages earned, at the rates Jennmar agreed to pay them, for all hours worked.

192.    Jennmar's failure to pay Murphy and the Pennsylvania Class Members all wages earned at the rates Jennmar agreed to pay them for all hours worked was neither reasonable, nor was the decision not to pay these employees all wages earned at the rates Jennmar agreed to pay them for all hours worked made in good faith.

193.    Jennmar's failure to pay Murphy and the Pennsylvania Class Members all wages earned at the rates Jennmar agreed to pay them for all hours worked was not the result of a *bona fide* dispute.

194.    Jennmar has acted willfully and has engaged in a continuing violation of the WPCL with respect to Murphy and the Pennsylvania Class Members.

195.    Accordingly, Murphy and the Pennsylvania Class Members are entitled to recover their unpaid "straight time" and overtime wages, plus liquidated damages, and attorney's fees and costs, as provided by the WPCL. *See* 43 PA. STAT. § 260.9a.

### JURY DEMAND

196.    Murphy demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Murphy, individually and on behalf of the Putative Class Members, seeks the following relief:

a.      An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order designating the Pennsylvania Class as a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Murphy and his counsel to represent the interests of the FLSA Collectives and Pennsylvania Classes;

d.      An Order pursuant to Section 16(b) of the FLSA finding Jennmar liable for unpaid overtime wages due to Murphy and the FLSA Collective Members, plus liquidated damages in amount equal to their unpaid compensation;

b.      An Order finding Jennmar liable to Murphy and the Pennsylvania Class Members for unpaid overtime wages owed under the PMWA, plus all available penalties;

c.      An Order finding Jennmar liable to Murphy and the Pennsylvania Class Members for unpaid "straight time" and overtime wages owed under the WPCL, plus liquidated damages;

d.      A Judgment awarding Murphy and the Putative Class Members all unpaid wages, penalties, and other damages available under the FLSA, PMWA, and WPCL;

e.      An Order awarding attorney's fees, costs, and expenses;

f.      An Order awarding pre- and post-judgment interest at the highest applicable rates; and

g.      An Order awarding such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_
Michael A. Josephson
PA ID No. 308410
Andrew W. Dunlap
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

Joshua P. Geist
PA ID No. 85745
William F. Goodrich
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**